# In the United States Court of Federal Claims

No. 08-771 C

(E-Filed: September 16, 2009)

| | |
|---|---|
| JEFFRY SCHMIDT, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Motion to Dismiss; Correction of Military Records; 28 U.S.C. § 2501; Statute of Limitations as Jurisdictional Bar; 10 U.S.C. § 1201; Transfer Pursuant to 28 U.S.C. § 1631; "Interest of Justice" |

Michael D.J. Eisenberg, Washington, DC, for plaintiff.

James P. Connor, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Lt. Commander Marc S. Brewen, Office of the Judge Advocate General, United States Navy, Washington, DC, of counsel.

OPINION

HEWITT, Chief Judge

Before the court are Defendant's Motion to Dismiss, or, in the Alternative, Motion for Judgment Upon the Administrative Record (defendant's Motion or Def.'s Mot.); Plaintiff's Corrected Memorandum in Support to Deny Defendant's Motion[] to Dismiss (plaintiff's Response or Pl.'s Resp.); Defendant's Reply in Support of Motion to Dismiss and Motion for Judgment Upon the Administrative Record, and Response to Plaintiff['s] Motion for Judgment Upon the Administrative Record (defendant's Reply or Def.'s Reply); and Plaintiff's Errata Response to Defendant's Reply in Support of Motion to Dismiss and Motion for Judgment Upon the Administrative Record, and Response to Plaintiff['s] Motion for Judgment Upon the Administrative Record (plaintiff's Reply or Pl.'s Reply). Plaintiff's Response contains a cross-motion for judgment on the

Administrative Record.  Pl.'s Resp. 15-17 (requesting judgment on the Administrative Record).

I.      Background

Plaintiff's claims stem from his honorable discharge from the United States Marine Corps (Marine Corps)[1] in 1989 by reason of medical disability.  See Complaint (Compl.) ¶ 6.  At the outset, the court will (1) summarize the process the United States Navy (Navy) uses to determine a discharge by reason of medical disability; (2) describe the facts and circumstances of plaintiff's discharge; and (3) discuss the pertinent procedural history that led to plaintiff's Complaint.

     A.     The Navy's Disability Evaluation System

Congress provided the Secretary of the Navy (Secretary) with general guidelines for the retirement or separation of Navy personnel due to physical disability in 10 U.S.C. §§ 1201-1222 (2006), but has given the Secretary broad discretion to design the regulations for the disability system, see 10 U.S.C. § 1216 (a)-(b) (2006) ("The Secretary concerned shall prescribe regulations to carry out this chapter within his department. . . . Except [for reasons of age or length of service] the Secretary concerned has all powers, functions, and duties incident to the determination under this chapter . . . .").  The Secretary published regulations for the disability system in the Secretary of the Navy Instruction (SECNAVINST) 1850.4B (Dec. 7, 1987).[2]  SECNAVINST 1850.4B established the Navy Disability Evaluation System (DES) which acts on behalf of the Secretary in determining whether a Navy or Marine Corps member has a medical disability and the benefits to which a service member is entitled.  See SECNAVINST 1850.4B ¶¶ 101-104 (listing the authorities for the creation of the DES).

A service member claiming a medical disability first appears before a Medical Board which "[f]ormulate[s] conclusions and recommendations regarding the present

---

[1] The United States Marine Corps (Marine Corps) is part of the United States Navy (Navy).  See Secretary of the Navy Instructions (SECNAVINST) 1850.4B ¶ 502 (Dec. 7, 1987) (listing the Commandant of the Marine Corps as a "convening authority").

[2] Defendant notes that SECNAVINST 1850.4E (Apr. 22, 2002) is the current version of the Navy's Disability Evaluation System (DES), but that SECNAVINST 1850.4B "is the relevant authority" because it was in effect at the time of Mr. Schmidt's discharge.  Defendant's Motion to Dismiss, or, in the Alternative, Motion for Judgment Upon the Administrative Record (defendant's Motion or Def.'s Mot.) 3 n.3.

state of health of members referred to it" and refers cases to the "Central Physical Evaluation Board [(CPEB)] for determination of fitness for active duty." Id. ¶ 504(d)-(e). The CPEB "evaluate[s] the [service member's] physical fitness for active duty." Id. ¶ 702.  The CPEB makes decisions upon review of: (1) "[M]edical [B]oard reports and associated documents," (2) "statements of non-medical information," and (3) "any other pertinent matters." Id. ¶ 706(d). During this process a service member must be "counseled, in clearly understandable language, concerning the significance of actions being taken in his or her case, their probable effect on his or her future, and his or her rights with respect to options available to him or her." Id. ¶ 218(a).  If a service member is determined by the CPEB to be "unfit for duty," then the CPEB will determine, among other things, the service member's disability rating "in accordance with the Veterans Administration[3] Schedule for Rating Disabilities." Id. ¶ 706(d)(5).  The findings of the CPEB do not become final "unless accepted by the member under evaluation." Id. ¶ 706(g)(1).

When a service member is presented with a report from the CPEB that deems the service member "unfit for duty," the service member can: (1) "accept[] the Board decisions and actions," (2) submit a rebuttal, or (3) "demand[] a formal hearing before a regional physical evaluation board [(RPEB)]." Id.  If a service member accepts the CPEB's findings, then the matter is "referred to the Judge Advocate General [(JAG)] for legal review" and, in the "absence of legal objection to [the CPEB's] findings," the CPEB's decision becomes final. Id. ¶ 706(j)-(k).  If a service member who has been deemed "unfit for duty" requests a formal review of his or her case, the RPEB must conduct a formal hearing. Id. ¶¶ 706(g)(1), 803.

      B.      Circumstances of Mr. Schmidt's Case

Plaintiff, Mr. Jeffry Schmidt, served in the Marine Corps from February 24, 1983[4] until March 1, 1989, when he was honorably discharged at the rank of Corporal. Administrative Record (AR)[5] 99, 107.  On November 4, 1988 a Medical Board at the

---

[3] The Veterans Administration became the United States Department of Veterans Affairs (VA) in 1989.

[4] Plaintiff's Complaint (Compl.) states that he entered service on February 3, 1983. Compl. ¶ 9.  However, documents in the Administrative Record (AR), which appear to be copies of plaintiff's official military records, indicate that plaintiff entered service on February 24, 1983. AR 107.

[5] Defendant filed the AR with defendant's Motion.  For the purposes of a motion to
(continued...)

Naval Hospital in Cherry Point, North Carolina, diagnosed Mr. Schmidt with lower back pain.  AR 8, 51.  Before his diagnosis he had "low back pain for several years" and was "unable to run for over 2-1/2 years while on active service."  AR 8.  A few months before his Medical Board evaluation, Mr. Schmidt had a water-skiing accident that increased his lower back pain.  Id.  During his Medical Board Evaluation Mr. Schmidt also complained of pain in his "left great toe" due to a puncture wound to that toe in 1987 and of "recurrent pain in his left shoulder."  Id.  The Medical Board concluded that Mr. Schmidt suffered from mechanical "low back pain," metatarsophalangeal joint (bilateral) arthralgia and scapulothoracic bursitis (left shoulder).  AR 9.  Mr. Schmidt did not submit a rebuttal and accepted the Medical Board's recommendation that his case be forwarded to the CPEB on November 4, 1988.  See AR 10.

The CPEB found plaintiff unfit for duty by reason of "physical disability."  AR 4.  It rated Mr. Schmidt's lower back condition as 10% disabling.  Id.  The CPEB also found that Mr. Schmidt's metatarsophalangeal joint arthralgia and scapulothoracic bursitis were "not separately unfitting and [did] not contribute to the unfitting condition[]."  Id.  Mr. Schmidt was notified of the CPEB's decision on December 28, 1988.  AR 3.  On January 25, 1989 Mr. Schmidt formally accepted the CPEB's decision and acknowledged that he had received his DES counseling pursuant to SECNAVINST 1850.4B ¶ 218.  AR 6.  On February 8, 1989 the president of the CPEB notified the Commandant of the Marine Corps of the CPEB's findings and requested that Mr. Schmidt be honorably discharged by reason of physical disability rated at 10%.  AR 2.  The letter stated that JAG had reviewed Mr. Schmidt's file and "no legal objection [was] interposed."  Id.; see SECNAVINST 1850.4B ¶ 706(j)-(k) (requiring that all findings of the CPEB be reviewed by JAG).

On March 1, 1989 Mr. Schmidt was honorably discharged from the Marine Corps by reason of physical disability with a 10% disability rating.  AR 2, 99.  He was given $13,230.22 in severance pay.  AR 200.  Almost immediately after his discharge, "[o]n or about March 2, 1989, [p]laintiff filed for Department of Veterans Affairs [(VA)] benefits."  Pl.'s Resp. 3.  The VA eventually gave Mr. Schmidt a 60% disability rating.  Id. 3-4 (citing various VA rating decisions).[6]

---

    [5](...continued)
dismiss the court must treat all allegations made by plaintiff as true.  Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("In ruling on a . . . motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  The facts cited by the court to the AR do not appear to be in dispute.

    [6] Plaintiff attached VA disability rating decisions to Plaintiff's Corrected Memorandum
(continued...)

Plaintiff appears to have been diagnosed by the VA with major depression on April 19, 2000 and Posttraumatic Stress Disorder (PTSD) on August 21, 2002.[7] Attachment to plaintiff's Response (AA) 31-32, 51.  This combined diagnosis was made effective November 4, 1998.  Id. at 3-4, 27; Def.'s Reply 7.  Plaintiff was aware of his mental illnesses sometime in 1999.  See AR 28-30 (letters from medical professionals describing Mr. Schmidt's mental illnesses).

Plaintiff claims that in 1989 the CPEB should have rated him at least 60% disabled.  Pl.'s Resp. 7.  He argues that a 60% rating would have required the Navy to place him on the Temporary Disability Retirement List (TDRL), which would have enabled the Navy to diagnose fully his mental illnesses.  Id.

Plaintiff's PTSD and major depression stem from two incidents that took place during plaintiff's military service.  Mr. Schmidt was a field radio operator on the USS Saipan when a CH-46 helicopter and a CH-53 helicopter collided and eighteen Marines drowned.  AA 10.  Plaintiff handled all "VHF communications" during the rescue

---

[6](...continued)
in Support to Deny Defendant's Motion[] to Dismiss (plaintiff's Response or Pl.'s Resp.).  These documents were labeled AA 1 through AA 80.  Although plaintiff did not move to supplement the AR in this case, defendant "does not object to the inclusion of these additional documents in the [AR]."  See Def.'s Reply 7 n.5 (noting that, at least in some instances, plaintiffs have been allowed to supplement the record in military pay cases).  Accordingly, for the purposes of this Opinion the court will consider the VA rating decisions attached to plaintiff's Response.

[7] There is some discrepancy as to the exact date on which plaintiff was diagnosed with PTSD.  The VA evaluates mental health disabilities together and does not "evaluat[e] the same symptoms twice."  See Attachment to plaintiff's Response (AA) 31.  It appears to the court that plaintiff was diagnosed by the VA as having "major depression" in 2000, see AA 51, and was diagnosed by the VA as having "major depression, post traumatic stress disorder" in 2002, see AA 31.  Plaintiff's briefing states that "plaintiff ha[s] been suffering from PTSD since at least . . . November 4, 1998."  Pl.'s Resp. 7 & n.15 (noting that the VA awards benefits based on "the day of the application for . . . benefits not when the condition appears); AR 28-30 (letters from doctors dated 1999 stating that Mr. Schmidt suffers from major depression).  Defendant states that plaintiff was diagnosed with PTSD in 2000.  Defendant's Reply in Support of Motion to Dismiss and Motion for Judgment Upon the Administrative Record, and Response to Plaintiff['s] Motion for Judgment Upon the Administrative Record (defendant's Reply or Def.'s Reply) 6-7 (citing AA 51).

For the purposes of this Opinion it is not necessary for the court to determine the exact date of plaintiff's diagnosis because plaintiff's claims are untimely even if the court uses August 21, 2002 as Mr. Schmidt's date of diagnosis with PTSD.  See AR 31, 32.

operation.  Id.  The second incident occurred during a training exercise in France; plaintiff witnessed a fellow Marine die from a grenade explosion.  Id.  Mr. Schmidt was not treated for PTSD or major depression during his service, but he was treated for alcohol abuse after the USS Saipan accident.  See AR 26, 29, 309 (listing Mr. Schmidt's alcohol abuse treatment).

     C.     Procedural History

Mr. Schmidt submitted an application for correction of his naval records to the Board for Correction of Naval Records (BCNR) on December 24, 1990.  AR 60.  Mr. Schmidt claimed that his "medical evaluations were incomplete and unjust" and that "the [CPEB] gave [him] an unjust rating."  Id. (emphasis omitted).  To support his claim, Mr. Schmidt stated that his "VA rating [was] currently at 34%[8] with upgrade pending."  Id.  On March 16, 1992 the BCNR rejected Mr. Schmidt's application, stating in part:

> A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 5 March 1992. Your allegations of error and injustice were reviewed . . . .
>
> After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice.
>
> . . . .
>
> The fact that the VA awarded you a combined rating of 30 percent is insufficient to demonstrate that your discharge from the Marine Corps was erroneous, because the VA, unlike the military departments, may assign disability ratings without regard to the issue of fitness for military service. In the absence of any evidence which establishes that you suffered from any unfitting conditions other than your lower back condition, the Board was unable to recommend any corrective action in your case. Accordingly, your application has been denied.

---

[8]  It appears that at the time of his application to the Board for Correction of Naval Records (BCNR) Mr. Schmidt's disability rating by the VA was 30% and not 34%.  See AR 198 (letter dated January 5, 1990 from the VA to Mr. Schmidt).  The record is unclear as to Mr. Schmidt's disability rating from the VA as of December 24, 1990.  On October 25, 1990 Mr. Schmidt received a letter from the VA stating that his disability rating was increased 10%, but also stating that his combined rating remained at 30%.  AR 199.

AR 46; see Compl. ¶ 11.  The BCNR also noted that Mr. Schmidt accepted the findings of the CPEB.  AR 46.

On March 27, 2008 plaintiff made a second application and request for reconsideration at the BCNR focusing on his new PTSD diagnosis.  See AR 18-23; Compl. ¶ 12;.  Plaintiff stated that the VA gave him a disability rating of 100%.  AR 21; Compl. ¶ 10.  The VA rating included a 70% rating for "Major Depressive Disorder/PTSD," a 40% rating for "Degenerative Arthritis of the Spine," a 30% rating for "Hypertensive Heart Disease," a 10% rating for "Clavicle or Scapula, Impairment of," and a 10% rating for "Residuals of Foot Injury."  AR 21.  On May 13, 2008 the Acting Executive Director of the BCNR, Robert D. Zsalman, denied Mr. Schmidt's second application, stating:

> This is in reference to your application, DD Form 149, dated March 27, 2008.  You previously petitioned the Board and were advised in our letter of March 16, 1992, that your application had been disapproved.
>
> Your current application has been carefully examined.  Although, at least some of the evidence you have submitted is new, it is not material.  In other words, even if this information was presented to the [BCNR], the decision would inevitably be the same.  Accordingly, reconsideration is not appropriate at this time.
>
> It is regretted that the facts and circumstances of your case are such that a more favorable reply cannot be made.

AR 15.

On October 28, 2008 plaintiff filed his Complaint in this court.  Compl. 1.  He requests that this court find:  (1) that "the May 13, 2008 action of the BCNR[] was arbitrary and capricious," Compl. ¶ 26, (2) that the Navy's decision to discharge plaintiff was "unlawful or improper and set[] aside his discharge," id. ¶ 27, and (3) that "[p]laintiff is entitled to back pay and benefits over $10,000," id. ¶ 28.  In sum, plaintiff (1) seeks additional disability pay, (2) claims wrongful discharge, and (3) requests declaratory and injunctive relief.  See Compl. ¶¶ 26-32.

II.     Legal Standards

   A.     Tucker Act Jurisdiction

The United States Court of Federal Claims (Court of Federal Claims), like all federal courts, is a court of limited jurisdiction. See United States v. King, 395 U.S. 1, 3 (1969). The Tucker Act is the primary statute establishing the jurisdiction of the court. See 28 U.S.C. § 1491(a)(1) (2006). In relevant part, the statute provides that this court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." Id. The Tucker Act provides the waiver of sovereign immunity necessary to sue the United States for money damages, but a plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute, or constitutional provision itself, in order for the case to proceed. See United States v. Testan, 424 U.S. 392, 398 (1976).

The burden of proof of establishing jurisdiction is borne by the plaintiff. McNutt v. Gen. Motors Acceptance Corp. (McNutt), 298 U.S. 178, 189 (1936); Russell v. United States, 78 Fed. Cl. 281, 285 (2007). If the defendant challenges jurisdictional facts, the plaintiff must support them with "competent proof." McNutt, 298 U.S. at 189. The plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed. Cir. 1988). Jurisdiction is a threshold matter and a case can proceed no further if the court lacks jurisdiction to hear it. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

B.  The Court of Federal Claims "Jurisdictional" Statute of Limitations

Section 2501 of title 28 of the United States Code limits the court's jurisdiction to those claims that accrue no longer than six years before the complaint is filed: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2006); see Young v. United States (Young), 529 F.3d 1380, 1382 (Fed. Cir. 2008). The six-year limitation was "attached by Congress as a condition of the government's waiver of sovereign immunity." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). The court must strictly construe the six-year limitation and it cannot be equitably tolled. See John R. Sand & Gravel Co. v. United States (John R. Sand), 128 S. Ct. 750, 753-54 (2008) (holding that 28 U.S.C § 2501 is "jurisdictional" in nature). A claim in this court accrues "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment.'" Martinez v. United States (Martinez), 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (Ct. Cl. 1966)). The statute of limitations "run[s] from the date the plaintiff 'knew or should

have known of the claim.'" Oja v. Dep't of Army (Oja), 405 F.3d 1349, 1358 (Fed. Cir. 2005) (quoting United States v. Beggerly, 524 U.S. 38, 48-49 (1998)).

    C.    Motions to Dismiss

Rule 12(b) of the Rules of the United States Court of Federal Claims (RCFC) governs motions to dismiss. Specifically, RCFC 12(b)(1) governs the dismissal of claims for lack of subject matter jurisdiction. RCFC 12(b)(1). In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); see also Cambridge v. United States (Cambridge), 558 F.3d 1331, 1335 (Fed. Cir. 2009) (discussing RCFC 12(b)(6)); Reynolds, 846 F.2d at 747.

III.    Discussion

    A.    Statute of Limitations

Defendant claims that, even if properly pleaded,[9] plaintiff's claims are barred by the six-year statute of limitations in 28 U.S.C. § 2501. Def.'s Mot. 11. Section 2501 of title 28 of the United States Code states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim under the Tucker Act accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability.'" Chambers v. United States (Chambers), 417 F.3d 1218, 1223 (Fed. Cir. 2005) (citation omitted).

In support of its argument defendant cites Martinez, 333 F.3d at 1303-04, and Chambers, 417 F.3d at 1224. Def.'s Mot. 11-12. The United States Court of Appeals for the Federal Circuit (Federal Circuit) in Martinez held that a claim of wrongful discharge

---

[9] Disability retirement claims are money mandating under 10 U.S.C. § 1201 (2006). Chambers v. United States (Chambers), 417 F.3d 1218, 1223 (Fed. Cir. 2005) (finding that 10 U.S.C. § 1201 is "a money-mandating statute"). Claims for wrongful discharge are money mandating under the Military Pay Act, 37 U.S.C. § 204 (2006). Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204."). Although plaintiff's Complaint (Compl.) does not cite 10 U.S.C. § 1201 or 37 U.S.C. § 204, for the purposes of this Opinion the court will assume that plaintiff's Complaint was properly pleaded.

accrues on the date of discharge. Martinez, 333 F.3d at 1310. The Chambers court held that a claim for disability retirement pay accrues when "the appropriate military board either finally denies such a claim or refuses to hear it." Chambers, 417 F.3d at 1224. This is commonly referred to as the "first competent board rule." Id. at 1225.

Plaintiff makes three arguments in support of the timeliness of his claim. First, plaintiff claims that the statute of limitations should be tolled because of plaintiff's mental illness. Pl.'s Resp. 6. Second, he argues that his claim is timely because the May 13, 2008 decision of the BCNR denying reconsideration of its prior decision of March 16, 1992 falls within the six-year statute of limitations of this court. Id. Third, plaintiff suggests that the court should allow some sort of equitable tolling of the statute of limitations.[10] See id. at 8-10.

While the court is appreciative of plaintiff's service to the United States and cognizant of the physical and mental disabilities that have stemmed from that service, the court finds that plaintiff's claims are barred by this court's statute of limitations and his Complaint must be dismissed for lack of subject matter jurisdiction. No matter which date the court uses as the date when plaintiff's claim accrued, plaintiff's complaint is time-barred. Because the court finds such a transfer to be "in the interest of justice," see infra Part III.C, the court transfers Mr. Schmidt's Complaint to the United States District Court for the District of Columbia.

    1.    The CPEB Findings That Were Accepted by Mr. Schmidt on January 25, 1989

Defendant argues that Mr. Schmidt's claims for disability retirement benefits accrued on January 25, 1989, when Mr. Schmidt accepted the findings of the CPEB. Def.'s Mot. 12 (citing SECNAVINST 1850.4B ¶ 706). Defendant argues that the CPEB was the "first competent board" to hear Mr. Schmidt's claims and that the statute of limitations runs from the decision of the "first competent board" to hear a service member's claim. Id. Defendant marshals a Federal Circuit decision, Real v. United States (Real), 906 F.2d 1557, 1560 (Fed. Cir. 1990), and a decision of this court, Fuller v.

---

[10] The court will not address plaintiff's equitable tolling arguments. The Supreme Court of the United States has stated that the statute of limitations in this court is "not susceptible to equitable tolling." John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, 755 (2008). Unlike this court's statute of limitations, the statute of limitations for boards for correction of military records allow for equitable tolling. See 10 U.S.C. § 1552(b) (2006) (stating that a military correction board "may excuse a failure to file within three years after discovery [of error or injustice] if it finds it to be in the interest of justice" (emphasis added)).

United States (Fuller), 14 Cl. Ct. 542, 544 (1988), in support of its argument that the CPEB was the first competent board to hear plaintiff's claims. Def.'s Mot. 12.

The Federal Circuit in Real stated that "[i]f at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period." Real, 906 F.2d at 1560; see also Fuller, 14 Cl. Ct. at 544 ("The [CPEB] is a proper and competent tribunal whose decision is adequate to trigger the running of the statute of limitations."). The Federal Circuit further approved of the rule stated in Real fifteen years later in Chambers. Chambers, 417 F.3d at 1225 (citing Real, 906 F.2d at 1560). The Chambers court held that if a claimant "has not had or sought a Retiring Board,[11] his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement)." Id. (quoting Friedman v. United States (Friedman), 159 Ct. Cl. 1, 24, 310 F.2d 381, 396 (Ct. Cl. 1962)).

Here, the facts and circumstances are unlike those in Chambers. The Federal Circuit in Chambers reversed the trial court's finding that the statute of limitations for military disability pay runs from the date of discharge. See Chambers, 417 F.3d at 1221. The Chambers court stated: "The appropriate inquiry under Real, therefore, is whether at the time of his separation from the [military] . . . [the plaintiff] knew that he was entitled to disability retirement . . . ." Id. at 1226. The Chambers court was describing a situation where the plaintiff did not appear before an informal PEB prior to discharge and was deciding whether or not the plaintiff's claim accrued from the date of discharge or from the date the Army Board for Correction of Medical Records (ABCMR) made its decision. Id. at 1221. Mr. Schmidt, unlike the plaintiff in Chambers, appeared before a "Retiring Board" (now called the CPEB). See AR 4. He accepted the findings of the CPEB on January 25, 1989. AR 6. He acknowledged that he had received counseling and waived his right to a formal hearing by the RPEB. See id. Because Mr. Schmidt, unlike the plaintiff in Chambers, appeared before a CPEB, he "knew that he was entitled to disability retirement." Cf. Chambers, 417 F.3d at 1226. Accordingly, plaintiff's claim accrued when he accepted the CPEB's findings. See id.; Lockwood v. United States, No. 06-543C, 2008 U.S. Claims LEXIS 157, at *17-20 (Fed. Cl. June 5, 2008) (addressing a

---

[11] A footnote in Chambers states: "A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the [military's] standards for retention under its regulations." See Chambers, 417 F.3d at 1225 n.2.

similar factual circumstance and finding that the plaintiff's claim accrued when the CPEB made its decision).

An "informal" CPEB decision is sufficient to start the running of the statute of limitations. The CPEB or Physical Evaluation Board (PEB) is known as the informal evaluation board and the RPEB is known as the formal evaluation board. See SECNAVINST 1850.4B ¶¶ 701-703. The Federal Circuit in Gant v. United States (Gant) upheld the trial court's decision to dismiss a plaintiff's case when the plaintiff waived "his right to a formal PEB hearing" through "a knowing and voluntary acceptance of the informal PEB's conclusions that he was unfit for military service and that his disability rating was 10 percent." 417 F.3d 1328, 1329, 1330 (Fed. Cir. 2005).[12] Under Gant, plaintiff's claims accrued after the decision of the CPEB in 1992 and, accordingly, his Complaint is time-barred. See Gant, 417 F.3d at 1330.

It is unclear when plaintiff became aware of his PTSD. See supra Part I.B n.7 (noting that 2002 is the latest possible date that plaintiff would have become aware of his PTSD). Because the court views the Complaint in the light most favorable to plaintiff, see Cambridge, 558 F.3d at 1335, plaintiff's PTSD diagnosis in 2002 will be considered as the date plaintiff "knew or should have known" about his claim. See Oja, 405 F.3d at 1358 (holding that the statute of limitations runs from the time when a plaintiff knew or should have known about a claim).

2.   Plaintiff's Discharge from the Marine Corps on March 1, 1989

Plaintiff also claims wrongful discharge. See Compl. ¶¶ 26-32. Plaintiff's wrongful discharge claim is clearly time-barred. On March 1, 1989 Mr. Schmidt was honorably discharged from the Marine Corps by reason of physical disability with a 10% rating. AR 2, 99. He was given $13,230.22 in severance pay. AR 200. Claims for wrongful discharge accrue on the date of discharge. Martinez, 333 F.3d at 1310.

---

[12] Defendant--in what appears to the court to be an error--cites this court's earlier view of the accrual of the statute of limitations in disability pay cases, which is in conflict with a later decision by the United States Court of Appeals for the Federal Circuit (Federal Circuit). See Def.'s Mot. 12 (citing Gant v. United States (Gant), 417 F.3d 1328, 1330 (Fed. Cir. 2005) and using the signal "but see" in a citation to Pope v. United States (Pope), 15 Cl. Ct. 218, 224-25 (1988)). In Pope, the United States Claims Court noted that "[i]t is the court's opinion that [10 U.S.C. § 1214 (2006)] expressly invites the claimant to seek a reopening of an informal decision at a later time, and thus precludes any informal PEB decision from being final." Pope, 15 Cl. Ct. at 224 (relying on 10 U.S.C. § 1214, which states that "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it"). To the extent Pope is inconsistent with Gant, it is no longer good authority.

Plaintiff filed his complaint in this court more than nineteen years after his discharge; accordingly, plaintiff's claim for wrongful discharge must be dismissed as untimely. See id.

      3.      The BCNR's Decision of March 16, 1992

Even if plaintiff's disability retirement claim did not accrue when the CPEB made its decision, it accrued on March 16, 1992 when the BCNR made its first decision. Mr. Schmidt submitted an application for the correction of his naval records to the BCNR on December 24, 1990. AR 60. On March 16, 1992 the BCNR rejected Mr. Schmidt's application. AR 46. The cause of action for disability retirement benefits in this court accrues when the BCNR denies a claim. Chambers, 417 F.3d at 1227. Mr. Schmidt filed his Complaint in this court more than sixteen years after the BCNR's decision denying his claim; accordingly, any review of the 1992 BCNR decision is time-barred. See id.; Real, 906 F.2d at 1560 ("The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event.").

However, the court will look to later events because plaintiff's PTSD diagnosis in 2002, when viewed in the light most favorable to plaintiff, see Cambridge, 558 F.3d at 1335, may have extended the time when plaintiff "knew or should have known" about his claim, see Oja, 405 F.3d at 1358.

      4.      The BCNR's Reconsideration Decision of May 13, 2008

Plaintiff argues that his claim for disability retirement pay is timely because he is generally seeking judicial review of the May 13, 2008 BCNR decision denying reconsideration of his 1992 appeal. Pl.'s Resp. 6-7; Pl.'s Reply 2. The court does not find plaintiff's argument persuasive because "[a] petition for reconsideration by the [BCNR] does not restart the statute of limitations unless there is a showing of new evidence or changed circumstances." Smalls v. United States (Smalls), 298 Fed. App'x 994, 996 (Fed. Cir. 2008) (emphasis added) (citing Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 278-79 (1986)). Even if there is a showing of new evidence or changed circumstances, the "motion for reconsideration must be made within a reasonable time." Id. (emphasis added) (citing Van Allen v. United States (Van Allen), 236 Fed. App'x 612, 614-15 & n.2 (Fed. Cir. 2007)); see Cooley v. United States, 324 F.3d 1297, 1305 (Fed. Cir. 2003) ("Reconsideration of an agency's decision must arise within a reasonable period of time . . . ."); Dayley v. United States, 169 Ct. Cl. 305, 309-10 (1965) (noting the difference between reasonable requests for reconsideration and requests that occur "a considerable time after the earlier decision").

13

The court need not decide whether plaintiff's August 21, 2002 diagnosis with PTSD constitutes "new evidence" or "changed circumstances" because plaintiff did not request reconsideration by the BCNR within a reasonable period of time after the first BCNR decision in 1992. Plaintiff appeared before the CPEB in 1988, AR 3, was discharged in 1989, AR 2, sought review at the BCNR in 1990, AR 60, and received a BCNR decision denying his claims in 1992, AR 46. He waited sixteen years to file for reconsideration. AR 18-23. Sixteen years is clearly beyond the "short or reasonable" time for a petition for reconsideration to restart the statute of limitations. See Van Allen, 236 Fed. App'x at 614-15 & n.2 (agreeing with the Court of Federal Claims that a delay of two years for a petition for reconsideration at the BCNR "clearly exceeds the short or reasonable period which serves to deprive an administrative decision of finality for statute of limitations purposes" (citation omitted)); Smalls, 298 Fed. App'x at 996.

Even if the court were to use the date when plaintiff became aware of the claimed new evidence to calculate reasonableness, plaintiff's claims would still be time-barred. Plaintiff became aware of his PTSD, at the latest, in August 2002. See supra Part I.B n.7 (discussing the various dates that Mr. Schmidt could have been diagnosed with PTSD and noting that August 21, 2002 was the latest date); AA 32. He filed a request for reconsideration at the BCNR six years after that diagnosis. See AR 18-23; Compl. ¶ 12. Six years is clearly beyond the "short or reasonable" time for a petition for reconsideration to restart the statute of limitations. See Van Allen, 236 Fed. App'x at 614-15 & n.2; Smalls, 298 Fed. App'x at 996.

The court concludes that it cannot find plaintiff's claims timely under Oja's "knew or should have known" standard for claim accrual. See Oja, 405 F.3d at 1358. Plaintiff did not move for reconsideration within a "reasonable amount" of time after his diagnosis of PTSD; the court cannot extend the statute of limitations in order to review a motion for reconsideration that was not made within a "reasonable period of time." See Van Allen, 236 Fed. App'x at 614-15 & n.2; Smalls, 298 Fed. App'x at 996. Additionally, plaintiff had constructive notice that he had claims and "should have known" that he could claim another disability during the CPEB and BCNR processes.

Moreover, a service member is only entitled to one claim for military disability benefits. See Friedman, 159 Ct. Cl. at 33, 310 F.2d at 401 (noting that "out of one set of facts and circumstances involving the claimant's separation from service there arises but one claim" and "caution[ing] against multiplication of monetary claims successively arising out of essentially the same facts").

B.   Statutory Tolling Provision

Plaintiff argues that "[t]he six[-]year statute of limitations has been tolled . . . because of his mental illness. . . . prior to, during, and since his discharge." Pl.'s Resp. 6, 8-9; Pl.'s Reply 5 ("Plaintiff was suffering from a mental illness at the time of the [C]PEB, BCNR, and discharge."). Defendant argues that plaintiff was not "legally disabled." Def.'s Reply 7.

The statute of limitations for this court, while not allowing equitable tolling, John R. Sand, 128 S. Ct. at 753-54, does allow tolling for persons "under legal disability . . . at the time the claim accrues," see 28 U.S.C. § 2501. The law presumes competency and sanity, and a party claiming legal disability has a heavy burden of proving legal incapacity. See Goewey v. United States (Goewey), 222 Ct. Cl. 104, 112, 612 F.2d 539, 544 (Ct. Cl. 1979). To rise to the level of legal disability, the "plaintiff's mental illness must be acute and extreme—it must render the plaintiff 'incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.'" Ware v. United States, 57 Fed. Cl. 782, 788 (2003) (quoting Goewey, 222 Ct. Cl. at 114, 612 F.2d at 544). Plaintiff must show that his "failure to file was the direct result of a mental illness that rendered him incapable of rational thought or deliberate decision making, or incapable of handling his own affairs or unable to function in society." Barrett v. Principi (Barrett), 363 F.3d 1316, 1321 (Fed. Cir. 2004) (internal quotations omitted) (deciding incapacity in the context of equitable tolling of a United States Court of Appeals for Veterans Claims case).

PTSD and major depression are, of course, serious conditions. Mr. Schmidt, however, has not carried the "heavy burden" of proving legal incapacity. See Goewey, 222 Ct. Cl. at 112, 612 F.2d at 544. Mr. Schmidt has produced no evidence showing that his mental illness rose to the level of legal incapacity. See Pl.'s Resp. passim; Pl.'s Reply passim. Nothing in plaintiff's briefing indicates that Mr. Schmidt was "incapable of rational thought or deliberate decision making, or incapable of handling his own affairs or unable to function in society." See Barrett, 363 F.3d at 1321. Plaintiff makes only a general argument that because he was diagnosed with PTSD and major depression he was legally disabled. See, e.g., Pl.'s Resp. 8 ("[He] was suffering from a mental illness at the time. . . . [t]herefore . . . [he] could . . . not have fully appreciated the situation.").

Even assuming Mr. Schmidt had a legal disability at some point, that disability must be viewed as having ceased to exist sometime after December 24, 1990. After a legal disability ceases, a plaintiff must file a claim within three years. 28 U.S.C. § 2501. On December 24, 1990, plaintiff filed an application with the BCNR. AR 60, 95. Participation in legal or administrative proceedings in an effort to secure rights or benefits is an indication of mental capacity. See Goewey, 222 Ct. Cl. at 116, 612 F.2d at 546 (noting that a plaintiff's ability "to understand adverse proceedings, to assist in his own

15

defense, and to follow legal instructions in the furtherance of his own interests" shows that a person is not legally incompetent).

Plaintiff argues that the plaintiff in Goewey participated in his case to a greater extent than did Mr. Schmidt. Pl.'s Reply 7 (noting that the plaintiff in Goewey "utilized his lawyer's office for his own affairs" and "was active in communication and correspondence dealing with his legal issues"). There is ample evidence in the record that plaintiff was active in "his own affairs." Besides filing at the BCNR on December 24,1990, the record also shows that plaintiff wrote to Senator Alfonse D'Amato of New York on July 30, 1991 seeking a review of his case. AR 60, 73. He also wrote to his congressman, Representative Thomas Downey, in 1991. AR 94. Filing at the BCNR and writing to his Senator and Representative are actions which demonstrate that plaintiff "underst[ood] adverse proceedings," "assist[ed] in his own defense" and "follow[ed] legal instructions in furtherance of his own interests." See Goewey, 222 Ct. Cl. at 116, 612 F.2d at 546.

Any legal disability that Mr. Schmidt may have had ceased to exist no later than December 24, 1990, when plaintiff applied to the BCNR, and the statute of limitations under 28 U.S.C. § 2501, even if tolled due to legal disability, expired December 23, 1996. Plaintiff's Complaint was filed on October 28, 2008. Compl. 1. Evidence in the AR indicates that any legal disability had abated more than eighteen years before plaintiff filed the Complaint, thereby rendering the Complaint untimely.

      C.      Transfer to the United States District Court for the District of Columbia

In plaintiff's Reply, Mr. Schmidt requested "that, in the interest of justice" this court transfer his case to the United States District Court for the District of Columbia. Pl.'s Reply 11 (requesting "remov[al]" to the United States District Court for the District of Columbia).

Among other things, plaintiff claims that defendant violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (2006), by the promulgation of a Naval regulation that allows a staff member of the BCNR and not the BCNR itself to deny a petition for reconsideration. See Pl.'s Reply 2-5; Pl.'s Resp. 12-15; Compl. ¶¶ 15, 26. Plaintiff cites to a case in the United States District Court for the District of Columbia, Lipsman v. Sec'y of the Army (Lipsman), 335 F. Supp. 2d 48 (D.D.C. 2005) to support his argument. The court in Lipsman found that an Army regulation that allowed for a staff member of the ABCMR to make substantive determinations in reconsideration actions violated the APA. Lipsman, 335 F. Supp. 2d at 53-54. The court analyzed the authorizing statute for the ABCMR--the same statute that creates the BCNR--10 U.S.C. § 1552(a)(1), and found that Congress intended that the board, and not the board's staff,

16

be the only entity authorized to make decisions on behalf of the ABCMR.  Id.  The court remanded the case to the ABCMR and struck part of the regulation.  Id. at 56.

Here, a similar regulation allows for the Executive Director of the BCNR to determine whether evidence is "new and material" or if "other matter" has been submitted.  See 32 C.F.R. § 723.9 (2009) (codifying section 9 of the Secretary of the Navy Instruction 5420.193 (Nov. 19, 1997)).  The regulation states:

> All requests for further consideration will be initially screened by the Executive Director of the Board to determine whether <u>new and material evidence or other matter</u> (including, but not limited to, any factual allegations or arguments why the relief should be granted) has been submitted by the applicant. . . .  If no such evidence or other matter has been submitted, the applicant will be informed that his/her request was not considered by the Board because it did not contain new and material evidence or other matter.

Id. (emphasis added).  The statute authorizing the creation of the BCNR is the same as the statute that the Lipsman court analyzed.  See 10 U.S.C. § 1552(a)(1).  Here, the Acting Executive Director of the BCNR made a substantive legal decision that plaintiff's "new" evidence was not "material."  See AR 15 ("Although, at least some of the evidence you have submitted is new, it is not material.").

Defendant argues that "unlike the United States District Court for the District of Columbia, this [c]ourt does not possess jurisdiction under the APA, and therefore does not possess jurisdiction to entertain APA challenges to Navy regulations."  Def.'s Reply 14 (citing Martinez, 333 F.3d at 1303).  Defendant further notes that "Mr. Schmidt's [C]omplaint does not even include a challenge to any Navy regulation."  Id.  In light of plaintiff's arguments made in his briefing, the court views plaintiff's Complaint as challenging 32 C.F.R. § 723.9.  See Pl.'s Reply 2-5; Pl.'s Resp. 12-15; Compl. ¶ 15, 26 (claiming that the May 13, 2008 BCNR decision was "arbitrary and capricious").

Because the statute of limitations has expired, this court lacks jurisdiction to consider the merits of any aspect of plaintiff's Complaint that, if timely, otherwise could fall within its jurisdiction.  See John R. Sand, 128 S. Ct. at 753-54 (holding that the statute of limitations in this court is "jurisdictional" in nature).  In accordance with statute and precedent the court will consider whether it may transfer plaintiff's challenge to 32 C.F.R. § 723.9 to another court.  See Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (stating that the Court of Federal Claims should have considered whether transfer was appropriate once the court determined that it lacked jurisdiction).  Section 1631 of title 28 of the United States Code provides, "Whenever a

civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, <u>if it is in the interest of justice</u>, transfer such action . . . ." 28 U.S.C. § 1631 (2006) (emphasis added).

In order for a case to be transferred, the court must find that: (1) the transferring court lacks subject matter jurisdiction; (2) at the time the case was filed, the case could have been brought in the transferee court; and (3) such a transfer is in the interest of justice. See <u>Sanders v. United States</u>, 34 Fed. Cl. 75, 80-81 (1995).

       1.       This Court Lacks Subject Matter Jurisdiction

Even if the statute of limitations did not preclude the court from taking jurisdiction over some aspects of plaintiff's claim, the court is precluded from addressing plaintiff's claim to the extent it challenges Navy regulations because this court lacks general APA jurisdiction. See <u>Martinez</u>, 333 F.3d at 1313 (noting that the Court of Federal Claims does not have APA jurisdiction to consider non-monetary suits to correct military records); <u>McNabb v. United States</u> (<u>McNabb</u>), 54 Fed. Cl. 759, 767 (2002) (noting that "[i]n general, APA reviews are conducted in federal district court rather than the Court of Federal Claims, since the APA itself addresses 'relief other than money damages[,]' and money damages are the cornerstone of this court's Tucker Act jurisdiction" (citation omitted)).

       2.       The Case Could Have Been Brought in District Court

The court determines that the United States District Court for the District of Columbia would have jurisdiction over this claim. Decisions of military boards for correction of military records "are subject to review [in district courts] under § 706 of the [APA]." <u>Frizelle v. Slater</u>, 111 F.3d 172, 176 (D.C. Cir. 1997). Accordingly, it is the court's view that plaintiff's APA claim could be properly heard by a district court. See <u>Doe v. United States</u> (<u>Doe</u>), 372 F.3d 1308, 1312 (Fed. Cir. 2004) (citing <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 891-92 (1988)) ("Congress has also waived sovereign immunity for cases encompassed within the judicial review provisions of the APA, 5 U.S.C. §§ 701-706."); <u>McNabb</u>, 54 Fed. Cl. at 767 (noting that district courts, and not the Court of Federal Claims, have APA jurisdiction). It appears to the court that plaintiff's claim, to the extent it challenges the Navy regulation governing the 2008 BCNR decision, would be timely in a district court with general APA jurisdiction.

       3.       It Is in the Interest of Justice to Transfer Mr. Schmidt's Complaint

It is the court's view that Mr. Schmidt presents a non-frivolous argument that the Navy regulation allowing the BCNR executive director to evaluate the merits of requests

for reconsideration violates the APA.  See AR 15 (noting that the Acting Executive Director evaluated plaintiff's claims for "material[ity]"); Lipsman, 335 F. Supp. 2d at 53-56.  Accordingly, the court concludes that it is in the "interest of justice" to transfer Mr. Schmidt's Complaint.  See 28 U.S.C. § 1631.

The term "interest of justice" contained in section 1631 "is vague, [and] district courts have a good deal of discretion in deciding whether to transfer a case." Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999).  One "compelling reason for transfer is that the plaintiff, whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court, will be time-barred if his case is dismissed and thus has to be filed anew in the right court." Id. (citations omitted).  In addition, the court concludes that there can be other instances, as here, when a court could find it in the "interest of justice" to transfer a case.

The court views it to be in the "interest of justice" because plaintiff's claim appears to be non-frivolous and plaintiff cites to persuasive authority in the United States District Court for the District of Columbia.  See United States v. County of Cook, 170 F.3d 1084, 1088-89 (Fed. Cir. 1999) (allowing transfer of some of the claims and not others).  The court notes that decisions of other judges in the district court are not binding authority but can be persuasive.  The court notes that the United States Court of Appeals for the District of Columbia Circuit has not yet decided this issue.

IV.   Conclusion

The court, therefore, DISMISSES plaintiff's claims as barred by the statute of limitations except for plaintiff's claim that the Navy regulation that allowed for the BCNR 2008 disposal of his case violated the APA, which claim the court transfers to the district court.  Accordingly, the court GRANTS defendant's Motion, DENIES plaintiff's cross-motion, and orders that Mr. Schmidt's case be TRANSFERRED to the United States District Court for the District of Columbia.

      IT IS SO ORDERED.

                                                s/ Emily C. Hewitt
                                                EMILY C. HEWITT
                                                Chief Judge